# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| AYALA and MOSHE NIV<br><br>        Plaintiff,<br><br>    v.<br><br>FEDERAL NATIONAL<br>MORTGAGE ASSOCIATION<br>a/k/a FANNIE MAE<br><br>        Defendants. | **CIVIL ACTION NO.: 1:25-cv-01570-KMW-AMD**<br><br>**JURY TRIAL DEMANDED**<br><br>**DEFENDANT FEDERAL NATIONAL MORTGAGE ASSOCIATION'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)** |

---

**DEFENDANT FEDERAL NATIONAL MORTGAGE ASSOCIATION'S
MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO
FED. R. CIV. P. 12(B)(6)**

---

John M. McConnell
**GOLDBERG SEGALLA, LLP**
301 Carnegie Center Drive, Suite 200
Princeton, NJ 08540-6587
T: 609.986.1326
F: 609.986.1301
jmcconnell@goldbergsegalla.com
Attorneys for Defendant named as
Federal National Mortgage Association a/k/a
Fannie Mae, more properly pled as Federal
National Mortgage Association

## <u>TABLE OF CONTENTS</u>

I.    PRELIMINARY STATEMENT……………………………………………....1

II.   STATEMENT OF FACTS AND PROCEDURAL BACKGROUND………...…4

III.  STANDARD OF REVIEW……………………………………….…….…7

IV.   LEGAL ARGUMENT…………………………………………………...…..9

    A. PLAINTIFFS CANNOT STATE A CLAIM FOR UNJUST
       ENRICHMENT AS A MATTER OF LAW……………………………..…….9

V.    THE INDEMNITY PROVISION IN THE AGREEMENT BARS
      PLAINTIFFS CLAIMS………………………………………………...…13

VI.   THIS COURT MAY CONSIDER THE LEASE AGREEMENT
      IN DECIDING A FED. R. CIV. P. 12(b)(6) MOTION TO DISMISS……..….....15

VII.  CONCLUSION…………………………………………………….……15

**<u>TABLE OF AUTHORITIES</u>**

**Cases**

<u>Assocs. Com. Corp. v. Wallia</u>,
  211 N.J. Super. 231, 511 A.2d 709, 716 (App.Div. 1986) ........................................11

<u>Banco Popular N. Am. v. Gandi</u>,
  184 N.J. 161, 876 A.2d 253–67 (2005) ...............................................................8, 15

<u>Bell Atlantic Corp. v. Twombly</u>,
  550 U.S. 555 (2007) ...................................................................................................7

<u>Bethlehem Steel Corp. v. K.L.O. Welding Erectors, Inc.</u>,
  132 N.J. Super. 496 (App. Div. 1975) .....................................................................14

<u>Birnbaum v. Calabro</u>,
  2007 WL 1790589 at *3 (App. Div. June 22, 2017) .................................................14

<u>County of Morris v. Fauver</u>,
  153 N.J. 80 (1998) ....................................................................................................10

<u>Dai v. Community Medical Center</u>,
  295 N.J. Super. 206 (App. Div. 1996) .....................................................................14

<u>E. Dickerson & Son, Inc. v. Ernst & Young, LLP</u>,
  361 N.J. Super. 362, 825 A.2d 585 (App. Div. 2003), *aff'd*, 179 N.J. 500, 846 A.2d 1237
  (2004) .........................................................................................................................9

<u>Fowler v. UPMC Shadyside</u>,
  578 F.3d 203 (3d Cir. 2009) ...................................................................................7, 8

<u>In re Burlington Coat Factory Sec. Litig.</u>,
  114 F.3d 1410 (3d Cir. 1997) .....................................................................................9

<u>Kieffer v. Best Buy</u>,
  205 N.J. 213, 218-221 and 224-225 (2011) .............................................................14

<u>Koshliek v. Bd. of Chosen Freeholders of Passaic County</u>,
  144 N.J. Super. 336, 344 (Law Div.1976) ...............................................................10

<u>LT Propco, LLC v. Westland Garden State Plaza L.P.</u>,
  2010 N.J. Super. Unpub. LEXIS 3116 (App.Div. 2010) ...........................................9

<u>Lum v. Bank of Am.</u>,
  361 F.3d 217, 221 n.3 (3d Cir. 2004)..........................................................................9

M.J. Paquet, Inc. v. N.J. Dept. of Transp.,
  171 N.J. 378 (2002) ...........................................................................................10

Maersk Line v. TJM Int'l L.L.C.,
  427 F. Supp. 3d 528 (D.N.J. 2013) ..............................................................11, 12, 13

Nester v. O'Donnell,
  301 N.J. Super. 198, 210 (App. Div. 1997) ...............................................................10

N.J. Sports Prod. Inc. v. Bobby Bostick Promotions, LLC,
  405 N.J. Super. 173, 963 A.2d 890 (Ch. Div. 2007) .....................................................9

N'Jie v. Mei Cheung,
  2011 U.S. Dist. LEXIS 20328 (D.N.J. 2011) .............................................................10

O'Boyle v. Braverman, No. CV 08-553,
  2008 WL 11381906 (D.N.J. 2008) ...........................................................................9

Schenck v. HJI Assoc.,
  295 N.J. Super. 445 (App. Div. 1996) .....................................................................10

Suburban Transfer Serv., Inc. v. Beech Holdings, Inc.,
  716 F.2d 220, 226-27 (3d Cir. 1983) .....................................................................11

Tomaiuoli v. U.S. Fid. & Guar. Co.,
  75 N.J. Super. 192 (App. Div. 1962) ......................................................................10

Van Orman v. American Ins. Co,
  680 F.2d 301, 310 (3d Cir. 1982)..........................................................................11

VRG Corp. v. GKN Realty Corp.,
  135 N.J. 539, 541 (N.J. 1994) ...........................................................................10

Washington Construction Co. v. Spinella,
  8 N.J. 212 (1951) .........................................................................................10

## I.  **PRELIMINARY STATEMENT**

This is an unjust enrichment claim. Plaintiffs Ayala and Moshe Niv claim that Fannie Mae was unjustly enriched from improvements that they made while tenants at property owned by Fannie Mae, before it was sold.  *See* Ex. "A".  However, the lease between Fannie Mae and Plaintiffs was unequivocal that Plaintiffs were not to make any improvements without the prior written consent of Fannie Mae, and that if they did make any such improvements, that said improvements would become the property of Fannie Mae upon termination of the Lease Agreement, as follows:

7.  **ALTERATIONS AND IMPROVEMENTS.** Tenant shall make no alterations to the buildings or improvements on the Premises or construct any building or make any other improvements on or to the Premises without the prior written consent of Landlord.  Any and all alterations, changes, and/or improvements built, constructed or placed on the Premises by Tenant shall, unless otherwise provided by written agreement between Landlord and Tenant, be and become the property of Landlord and remain on the Premises at the expiration or earlier termination of this Agreement.  Tenant shall not disconnect or damage a smoke detector or carbon monoxide detector or remove the battery to either such device without immediately replacing it with a working battery.  In the event Tenant believes that any smoke detector or carbon monoxide detector is missing, malfunctioning or needs to be inspected or repaired, Tenant must notify Landlord immediately.

*See* Lease Agreement between Plaintiffs and Defendants, as Ex. "B."

Plaintiffs specifically reference the Lease Agreement in the Complaint. *See* Ex. "A." Despite that, Plaintiffs now claim that they have spent a "great deal of money," to improve the Property, including on kitchen renovations; roof and siding repair; swimming pool reopening; landscaping; painting; plumbing and electric repair; and garage door repair. *See* Ex. "A." Plaintiffs contend that Fannie Mae's sale of the Property to so5080meone not the Plaintiffs allowed Fannie Mae to unjustly retain such benefits without payment.  *Id*.  However, as set forth in the unambiguous terms of the Lease Agreement, which Plaintiffs specifically rely on in the Complaint:

"Any and all alterations, changes and/or improvements built, constructed or placed on the Premises by Tenant [Plaintiffs] shall, unless otherwise provided by written agreement between Landlord [Fannie Mae] and Tenant [Plaintiffs] become the

property of Landlord [Fannie Mae] and remain on the Premises at the expiration or earlier termination of this Agreement."

*See* Ex. "B."

Furthermore, Plaintiffs also agreed to release and indemnify Fannie Mae from any and all claims, liabilities, actions, costs and damages that Plaintiffs or their family members may suffer or incur as a result of the violation of the Agreement, as follows:

> 21. **RELEASE AND INDEMNIFICATION.** Except for Landlord's liability arising by operation of applicable law, Tenant, for itself and for any member of Tenant's family, or any invitee or guest of Tenant, releases and holds harmless Landlord and its successors, assigns, employees, officers, directors, contractors, agents and affiliates (collectively, the "**Released Parties**") from and against any and all claims, liabilities, actions, costs and damages that may arise out of (i) loss or theft of any personal property of Tenant, any member of Tenant's family, or any invitee or guest of Tenant, and (ii) any accidents or injuries to Tenant, any member of Tenant's family, or any invitee or guest of Tenant, in or about the Premises. Tenant agrees to indemnify Landlord and each of the other Released Parties from and against any and all claims, liabilities, actions, costs and damages that Tenant, any member of Tenant's family, or any invitee or guest of Tenant may suffer or incur as a result of any such person's negligence or willful misconduct and/or the violation of this Agreement.

*See* Exhibit "B", ¶ 21.

In the Complaint, Plaintiffs accuse Fannie Mae of violating the Agreement. *See* Ex. "A." Thus, under the Release and Indemnification provision of the Agreement, ¶21, Plaintiffs must indemnify and defend Fannie Mae for this action, and it should be barred as a matter of law. Plaintiffs also owe Fannie Mae costs, damages and attorney's fees that arise out of this lawsuit.

Also, insofar as Plaintiffs reference that the unjust enrichment claim is based on the Lease Agreement, ¶16(b) of the Agreement unequivocally states that Fannie Mae may transfer ownership of the Premises to a third party including, but not limited to a prospective purchaser, or any party claiming rights to the Premises either by contract, operation by law, or otherwise, as follows:

> (b)   Tenant acknowledges that Landlord may transfer ownership of the Premises to a third party, including, but not limited to, a prospective purchaser or any party claiming rights to the Premises either by contract, operation of law or otherwise. Landlord may, but is not obligated to, assign this Agreement when it transfers ownership. Landlord does not make any representations as to whether the transferee will agree to continue this Agreement or enter into a lease with Tenant or the terms of any agreement. Tenant acknowledges that Landlord is in no way

*See* Ex. "B" at ¶16(b).

Finally, to the extent that Plaintiffs rely on assertions made by the prior property owner, or improvements made before Fannie Mae owned the Property, in the Lease Agreement between Plaintiffs and Fannie Mae, ***Plaintiffs already agreed that***, "the Lease Agreement with Fannie Mae was not a continuation or transfer of any previous lease agreements, **that Landlord (Fannie Mae) has no liability to Plaintiffs relating to any such prior lease agreement**, and that no monies are due to Plaintiffs from Fannie Mae arising out of any such prior lease agreement, as follows:

> 1. **New Lease**. Tenant acknowledges that this Agreement is not a continuation or transfer of any lease agreement Tenant may have had with any former owner of the Premises. Tenant acknowledges that Landlord has no liability to Tenant relating to any such prior lease agreement and that no monies are due to Tenant from Landlord arising out of any such prior lease agreement.

*See* Exhibit "A", Addendum to Lease Agreement (Tenant-in-Place/Mortgage Release).

Thus, the Plaintiffs claims for unjust enrichment fail every which way. First, if they made the improvements while the prior owner, Mr. Zrihans owned the Property, they already agreed that when Fannie Mae took over ownership of the Property, that the Lease Agreement with Fannie Mae was not a continuation or transfer of any previous lease agreements, **that Landlord (Fannie Mae) has no liability to Plaintiffs relating to any such prior lease agreement**, and that no monies are due to Plaintiffs from Fannie Mae arising out of any such prior lease agreement. *See* Exhibit "A", Addendum to Lease Agreement (Tenant-in-Place/Mortgage Release). Next, if they made the improvements while Fannie Mae owned the Property, they already agreed that any such improvements become the property of Fannie Mae at the expiration of the Lease Agreement. *See* Ex. "B", ¶7. Either way, if the improvements occurred *before* Fannie Mae purchased the Property, or after Fannie Mae purchased the Property, Plaintiffs unjust enrichment claim must be dismissed as a matter of law.

## II.    <u>STATEMENT OF FACTS</u>

1.    Plaintiffs allege in the Complaint that they signed a five-year lease to rent the Property in 2013 when Mr. Hakim Zrihans purportedly owned it. *See* Exhibit "A", ¶ 12.

2.    Plaintiffs allege that the lease provided them with an option to purchase the Property at the end of the term. *See* Exhibit "A", ¶ 14.

3.    Between 2014 and 2015, the Property was foreclosed on and later purchased by Fannie Mae. *See* Exhibit "A", ¶¶ 15-18.

4.    On July 29, 2015, Plaintiffs entered an agreement with Fannie Mae to lease the Property ("Lease Agreement"). *See* Lease Agreement as Exhibit "B."

5.    In that Lease Agreement with Fannie Mae, ***Plaintiffs specifically agreed*** that the lease with Fannie Mae was not a continuation or transfer of any previous lease agreements, and **that Landlord (Fannie Mae) has no liability to Plaintiffs relating to any such prior lease agreement**, and that no monies are due to Plaintiffs from Fannie Mae arising out of any such prior lease agreement, as follows:

> 1.    **New Lease**.  Tenant acknowledges that this Agreement is not a continuation or transfer of any lease agreement Tenant may have had with any former owner of the Premises. Tenant acknowledges that Landlord has no liability to Tenant relating to any such prior lease agreement and that no monies are due to Tenant from Landlord arising out of any such prior lease agreement.

*See* Exhibit "A", Addendum to Lease Agreement (Tenant-in-Place/Mortgage Release).

6.    Additionally, as per the Lease Agreement, it was unequivocal that Plaintiffs were not to make any improvements without the prior written consent of Fannie Mae, and that if they did make any such improvements, that said improvements would become the property of Fannie Mae upon termination of the Lease Agreement, as follows:

7. **ALTERATIONS AND IMPROVEMENTS**. Tenant shall make no alterations to the buildings or improvements on the Premises or construct any building or make any other improvements on or to the Premises without the prior written consent of Landlord. Any and all alterations, changes, and/or improvements built, constructed or placed on the Premises by Tenant shall, unless otherwise provided by written agreement between Landlord and Tenant, be and become the property of Landlord and remain on the Premises at the expiration or earlier termination of this Agreement. Tenant shall not disconnect or damage a smoke detector or carbon monoxide detector or remove the battery to either such device without immediately replacing it with a working battery. In the event Tenant believes that any smoke detector or carbon monoxide detector is missing, malfunctioning or needs to be inspected or repaired, Tenant must notify Landlord immediately.

*See* Lease Agreement between Plaintiffs and Defendants, as Ex. "B" ¶ 7.

7.      Despite that, Plaintiffs bring claims for unjust enrichment against Fannie Mae, purporting that they spent "a great deal of money at the [P]roperty including, but not limited to: replac[ing] the refrigerator; washer; dryer; and dishwasher", "kitchen renovations; roof and siding repair; swimming pool reopening; landscaping; painting; plumbing and electric repair; and garage door repair. *See* Ex. "A."

8.      Plaintiffs claim in the Complaint that Fannie Mae's sale of the Property to someone not the Plaintiffs allowed Fannie Mae to unjustly retain such benefits without payment. *Id.*

9.      However, as set forth in the unambiguous terms of the Lease Agreement, which Plaintiffs specifically rely on in the Complaint,

> "Any and all alterations, changes and/or improvements built, constructed or placed on the Premises by Tenant [Plaintiffs] shall, unless otherwise provided by written agreement between Landlord [Fannie Mae] and Tenant [Plaintiffs] become the property of Landlord [Fannie Mae] and remain on the Premises at the expiration or earlier termination of this Agreement."

*See* Ex. "B."

10.     Furthermore, Plaintiffs also agreed to release and indemnify Fannie Mae from any and all claims, liabilities, actions, costs and damages that Plaintiffs or their family members may suffer or incur as a result of the violation of the Agreement, as follows:

21. **RELEASE AND INDEMNIFICATION.** Except for Landlord's liability arising by operation of applicable law, Tenant, for itself and for any member of Tenant's family, or any invitee or guest of Tenant, releases and holds harmless Landlord and its successors, assigns, employees, officers, directors, contractors, agents and affiliates (collectively, the "**Released Parties**") from and against any and all claims, liabilities, actions, costs and damages that may arise out of (i) loss or theft of any personal property of Tenant, any member of Tenant's family, or any invitee or guest of Tenant, and (ii) any accidents or injuries to Tenant, any member of Tenant's family, or any invitee or guest of Tenant, in or about the Premises. Tenant agrees to indemnify Landlord and each of the other Released Parties from and against any and all claims, liabilities, actions, costs and damages that Tenant, any member of Tenant's family, or any invitee or guest of Tenant may suffer or incur as a result of any such person's negligence or willful misconduct and/or the violation of this Agreement.

*See* Exhibit "B", ¶21.

11.     In Plaintiffs' Complaint, Plaintiffs accuse Fannie Mae of violating the Agreement. *See* Ex. "A."

12.     Thus, under the Release and Indemnification provision of the Agreement, ¶21, Plaintiffs must indemnify and defend Fannie Mae for this action, and it should be barred as a matter of law.

13.     Finally, insofar as Plaintiffs reference that the unjust enrichment claim is based on the Lease Agreement, ¶ 16(b) of the Agreement unequivocally states that Fannie Mae may transfer ownership of the Premises to a third party including, but not limited to a prospective purchaser, or any party claiming rights to the Premises either by contract, operation by law, or otherwise, as follows:

16. **MARKETING OF THE PREMISES; TRANSFER OF OWNERSHIP.** (a) Tenant understands that Landlord may market the Premises for sale or, without limiting Tenant's rights hereunder, for rent, and that Landlord, its agents and contractors will contact Tenant from time to time for access to the Premises. In addition to any other right of entry provided to Landlord by this Agreement or by applicable law, Tenant will permit Landlord, its agents and contractors to enter the Premises to facilitate such marketing efforts. Tenant also agrees to allow prospective purchasers and prospective renters and their agents or lenders to access to the Premises for open houses and in order to view, inspect or conduct appraisals of the Premises. Landlord, its agents or contractors will give Tenant not less than twenty-four (24) hours' advance notice, either verbally to an adult household member of Tenant or in writing, of a showing, open house or other need for access to the Premises pursuant to this paragraph. At Landlord's request, Tenant will vacate the Premises for a reasonable time period and leave the Premises in a clean and orderly condition when Landlord, its agents or contractors show the Premises to prospective purchasers or tenants. Tenant agrees that he/she will not interfere with the marketing of the Premises and will not communicate with a prospective purchaser or tenant without express written permission from Landlord. Landlord and its agents shall have the right access the Premises to display and remove "for sale," "for rent," "vacancy" or similar signs on the Premises at any time as well as other signs related to the sale, leasing or financing of the Premises.

(b)    Tenant acknowledges that Landlord may transfer ownership of the Premises to a third party, including, but not limited to, a prospective purchaser or any party claiming rights to the Premises either by contract, operation of law or otherwise.  Landlord may, but is not obligated to, assign this Agreement when it transfers ownership.  Landlord does not make any representations as to whether the transferee will agree to continue this Agreement or enter into a lease with Tenant or the terms of any agreement.  Tenant acknowledges that Landlord is in no way

*See* Ex. "B" at ¶16(b).

14.    Plaintiffs specifically reference and rely on the Lease Agreement in the Complaint. *See* Ex. "A."

## III.    <u>STANDARD OF REVIEW</u>

Pursuant to Fed. R. Civ. P. 8(a)(2), "[a] pleading that states a claim for relief . . .  must contain a short and plain statement of the claim showing that the pleader is entitled to relief." The pleading must "set out sufficient factual matter to show that the claim is facially plausible" so that a court may "draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotations omitted). A pleading that offers, "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 555 (2007). Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.

Additionally, Federal Rule of Civil Procedure 12(b)(6) provides that "a party may assert the following defenses by motion . . . (6) failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The United States Supreme Court set forth the standard for the factual allegations in a complaint in *Bell Atlantic Corp. v. Twombly*, ruling that "[f]actual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. at 555-56 (*citing* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-36 (3d ed. 2004)).

In *Ashcroft v. Iqbal*, the Supreme Court reiterated that to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is

plausible on its face." 556 U.S. 662, 678 (2009). Importantly, the Supreme Court also held that "the tenet that a court must accept as true all of the allegations contained in a complaint **is** inapplicable to legal conclusions." *Id*.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (*citing Twombly*, *supra* at 555). The Court went on to state that, "[a]lthough for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. at 678.

The Third Circuit instructs that when presented with a motion to dismiss, courts should engage in a two-part analysis. *Fowler*, *supra* at 210. First, the court must separate the factual and legal elements of each claim. *Id*. It "must accept all of the complaint's well-pleaded facts as true but may disregard any legal conclusions." *Id*. at 210-11 (*citing Iqbal*, *supra* at 677-78). Second, the court must determine whether the **facts** alleged are "**sufficient to show that the plaintiff has a 'plausible claim for relief**.'" *Id*. at 211 (*quoting Iqbal*, *supra* at 678). The plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, *supra* at 679. In other words, for the plaintiff to prevail, the "complaint must do more than allege the plaintiff's entitlement to relief"; it must "'show' such an entitlement with its facts." *Fowler*, *supra* at 211.

In addition, in evaluating motions to dismiss, the New Jersey Supreme Court has held that courts may consider "allegations in the complaint, exhibits attached to the complaint, matters of public record, and **documents that form the basis of a claim**." *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 183, 876 A.2d 253, 266–67 (2005) (*citing Lum v. Bank of Am*., 361 F.3d 217, 222 n. 3 (3d Cir.), *cert. denied*, 125 S.Ct. 271, 160 L.Ed.2d 203 (2004)). Similarly, the Third Circuit

Courts have held that "[c]ourts are permitted to examine public records, including those concerning judicial proceedings, when considering a motion to dismiss for failure to state a claim." *O'Boyle v. Braverman*, No. CV 08-553, 2008 WL 11381906, *5 (D.N.J. 2008), *aff'd*, 337 F. App'x 162 (3d Cir. 2009) (*citing S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999)).

A court may consider documents referenced in the complaint without converting a motion to dismiss into one for summary judgment. *E. Dickerson & Son, Inc. v. Ernst & Young, LLP*, 361 N.J. Super. 362, 365 n.1, 825 A.2d 585 (App. Div. 2003), *aff'd*, 179 N.J. 500, 846 A.2d 1237 (2004); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997); *N.J. Sports Prod. Inc. v. Bobby Bostick Promotions, LLC*, 405 N.J. Super. 173, 178, 963 A.2d 890 (Ch. Div. 2007).

Similarly, the New Jersey Supreme Court has stated "in evaluating motions to dismiss, courts consider allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *LT Propco, LLC v. Westland Garden State Plaza L.P.*, 2010 N.J. Super. Unpub. LEXIS 3116, *9-10 (App.Div. 2010) (*citing Banco Popular N. Am v. Gandi*, 184 N.J. 161, 183 (2005) (*quoting Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004)) (internal brackets and quotations omitted)). "The purpose of this rule is to avoid the situation where a plaintiff with a legally deficient claim that is based on a particular document can avoid dismissal of that claim by failing to attach the relied upon document." *Id.* (*citing Lum*, *supra* at 221 n.3). "Reliance on a document referenced in a complaint gives a plaintiff notice that it will be considered." *Id.* (*citing Lum*, *supra* at 221 n.3).

IV.    **LEGAL ARGUMENT**

   A.    **PLAINTIFFS CANNOT STATE A CLAIM FOR UNJUST ENRICHMENT AS A MATTER OF LAW**.

Plaintiffs claim that Fannie Mae was unjustly enriched due to improvements Plaintiffs made to the Fannie Mae Property. *See* Ex. "A". However, under the lease, Plaintiffs already agreed that Fannie Mae was entitled to any improvements made to the Property. *See* Ex. "B". This is important, as in New Jersey, agreements are given their plain and ordinary meaning. *M.J. Paquet, Inc. v. N.J. Dept. of Transp.*, 171 N.J. 378, 396 (2002) (citing *Nester v. O'Donnell*, 301 N.J. Super. 198, 210 (App. Div. 1997)). When the terms of a contract are clear, the court must enforce them as written. *County of Morris v. Fauver*, 153 N.J. 80, 103 (1998) (citing *Koshliek v. Bd. of Chosen Freeholders of Passaic County*, 144 N.J. Super. 336, 344 (Law Div.1976)). A court has no power to rewrite the contract of the parties by substituting a new or different provision from what is clearly expressed in the instrument. See *Schenck v. HJI Assoc.*, 295 N.J. Super. 445, 450 (App. Div. 1996), certif. denied, 149 N.J. 35 (1997); Tomaiuoli v. U.S. Fid. & Guar. Co., 75 N.J. Super. 192, 201 (App. Div. 1962). It is well settled that the court will not make a different or a better contract than the parties themselves have seen fit to enter into. *Washington Construction Co. v. Spinella*, 8 N.J. 212 (1951).

New Jersey contract law is essential to show that Plaintiffs cannot state a claim, under Fed. R. Civ. P. 12(b)(6), as none of the elements of unjust enrichment can be met as a matter of law. "To establish a claim for unjust enrichment, a plaintiff must prove that defendant received a benefit and that retention of that benefit without payment would be unjust." *N'Jie v. Mei Cheung*, 2011 U.S. Dist. LEXIS 20328, *16 (D.N.J. 2011) (*citing VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 541 (N.J. 1994)). The doctrine of unjust enrichment "requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *Id.* (*citing VRG Corp.*, *supra* at 541).

"Retention is unjust when the plaintiff expects payment for the service, or the defendant retains a benefit at the expense of the plaintiff." *Maersk Line v. TJM Int'l L.L.C.*, 427 F. Supp. 3d 528, 535 (D.N.J. 2013) (*citing Assocs. Com. Corp. v. Wallia*, 211 N.J. Super. 231, 511 A.2d 709, 716 (App.Div. 1986)).

"Quasi-contract liability will not be imposed when a valid, unrescinded contract governs the rights of the parties." *Id.* (*citing Van Orman v. American Ins. Co.*, 680 F.2d 301, 310 (3d Cir. 1982)). "The authority of an express contract will take precedent over a theory of unjust enrichment or quasi-contract liability concerning the identical subject matter since the parties are bound by their agreement, and there is no ground for implying a promise so long as a valid unrescinded contract governs the rights of the parties." *Id.* at 16-17 (*citing Suburban Transfer Serv., Inc. v. Beech Holdings, Inc.*, 716 F.2d 220, 226-27 (3d Cir. 1983) (internal brackets and quotations omitted)).

In this case, Plaintiffs allege that they spent "a great deal of money at the [P]roperty including but not limited to: replac[ing] the refrigerator; washer; dryer; and dishwasher." *See* Exhibit "A." As such, Plaintiffs argue that to allow Fannie Mae to retain such benefits without payment would be unjust.

However, the subject matter of Plaintiffs' unjust enrichment claim against Fannie Mae is covered by an express contract, *i.e.*, the Agreement, between these parties, where Plaintiffs already agreed that any additions or improvements at the Property would remain the property of Fannie Mae and stay at the premises at the conclusion of the Agreement.  *See* Ex. "B."  Specifically, Paragraph 7, entitled Alterations and Improvements, mandated that Plaintiffs, "shall make no alterations to the buildings or improvements on the Premises or construct any building or make any other improvements on or to Premises without prior written consent of Landlord." *See* Exhibit

"B," ¶7. Additionally, in the event such were approved, "[a]ny and all alterations, changes, and/or improvements built, constructed, or placed on the Premises by Tenant shall, unless otherwise provided by written agreement between Landlord and Tenant, be and become the property of Landlord and remain on the Premises at the expiration or earlier termination of the Agreement." *See* Exhibit "B, ¶7."

Here, the subject matter of this dispute, Plaintiffs' improvement of the Property, is covered in Paragraph 7 of the Agreement, ***where Plaintiffs already agreed*** that any alterations would become the property of Fannie Mae. *Id*. Plaintiffs were not permitted to improve the Property without prior approval. However, if improvements were to be made, as Plaintiffs alleges, here, such would "be and become" Fannie Mae's property and remain on the Premises at the expiration of Plaintiffs' lease. Therefore, as a matter of law, Plaintiffs cannot state a claim for "expected remuneration" from Fannie Mae when ***they already agreed***, in Paragraph 7 of the Agreement, that any improvements to the Property would remain therewith. *Id*. Similarly, Plaintiffs cannot establish that the course of events in this case were "unjust" since Plaintiffs cannot reasonably contend that they expected Fannie Mae to pay them for such alleged improvements, when they had already agreed that such improvements become the property of Fannie Mae at the expiration of the Lease Agreement, as follows:

7. **ALTERATIONS AND IMPROVEMENTS**. Tenant shall make no alterations to the buildings or improvements on the Premises or construct any building or make any other improvements on or to the Premises without the prior written consent of Landlord. Any and all alterations, changes, and/or improvements built, constructed or placed on the Premises by Tenant shall, unless otherwise provided by written agreement between Landlord and Tenant, be and become the property of Landlord and remain on the Premises at the expiration or earlier termination of this Agreement. Tenant shall not disconnect or damage a smoke detector or carbon monoxide detector or remove the battery to either such device without immediately replacing it with a working battery. In the event Tenant believes that any smoke detector or carbon monoxide detector is missing, malfunctioning or needs to be inspected or repaired, Tenant must notify Landlord immediately.

*Id*. at ¶7.

Additionally, part of the basis of Plaintiffs' claim for unjust enrichment is the fact that they relied upon an alleged 2013 pre-Lease Agreement dealings with Mr. Hakim Zrihans, who Plaintiffs claim formerly owned the Property.  *See* Ex. "A".  Plaintiffs explain that as per their agreement with Mr. Zrihans, they expected to have the opportunity to purchase the Property once the initial five-year lease term expired.  *Id.* at ¶14.  Thus, the Plaintiffs claims for unjust enrichment fail every which way.  First, if they made the improvements while Mr. Zrihans owned the Property, they already agreed that when Fannie Mae took over ownership of the Property, that the Lease Agreement with Fannie Mae was not a continuation or transfer of any previous lease agreements, and **that Landlord (Fannie Mae) has no liability to Plaintiffs relating to any such prior lease agreement**, and that no monies are due to Plaintiffs from Fannie Mae arising out of any such prior lease agreement.  *See* Exhibit "A", Addendum to Lease Agreement (Tenant-in-Place/Mortgage Release).  Next, if they made the improvements while Fannie Mae owned the Property, they already agreed that any such improvements become the property of Fannie Mae at the expiration of the Lease Agreement.  *See* Ex. "B", ¶7.  Either way, if the improvements occurred *before* Fannie Mae purchased the Property, or after Fannie Mae purchased the Property, Plaintiffs unjust enrichment claim must be dismissed as a matter of law.

## V.    THE INDEMNITY PROVISION IN THE AGREEMENT BARS PLAINTIFFS CLAIMS.

In the Complaint, Plaintiffs claim that Fannie Mae violated the Agreement. *See* Ex. "A." However, Plaintiffs already agreed to indemnify Fannie Mae from **any and all** claims, liabilities, actions, costs and damages that Plaintiffs or their family members may suffer or incur as a result of any violation of the Agreement, as follows:

> 21. **RELEASE AND INDEMNIFICATION.** Except for Landlord's liability arising by operation of applicable law, Tenant, for itself and for any member of Tenant's family, or any invitee or guest of Tenant, releases and holds harmless Landlord and its successors, assigns, employees, officers, directors, contractors, agents and affiliates (collectively, the "**Released Parties**") from and against any and all claims, liabilities, actions, costs and damages that may arise out of (i) loss or theft of any personal property of Tenant, any member of Tenant's family, or any invitee or guest of Tenant, and (ii) any accidents or injuries to Tenant, any member of Tenant's family, or any invitee or guest of Tenant, in or about the Premises. Tenant agrees to indemnify Landlord and each of the other Released Parties from and against any and all claims, liabilities, actions, costs and damages that Tenant, any member of Tenant's family, or any invitee or guest of Tenant may suffer or incur as a result of any such person's negligence or willful misconduct and/or the violation of this Agreement.

*See* Exhibit "B", ¶21.

In New Jersey, this is important, as it is well settled that the language used in an Agreement, i.e., **"Any and all claims"** or **"any claims and losses"** is interpreted as broad and all-inclusive language. *Kieffer v. Best Buy*, 205 N.J. 213, 218-221 and 224-225 (2011) (holding indemnification agreement utilizing "any and all claims" triggered agreement and is broader than an indemnification agreement triggered from only an act of "negligence, omissions, or [other] conduct"); *Dai v. Community Medical Center*, 295 N.J. Super. 206, 210 (App. Div. 1996) ("**The words 'any and all' convey the intent that complete and full indemnity is to be provided**"); Bethlehem Steel Corp. v. K.L.O. Welding Erectors, Inc., 132 N.J. Super. 496, 499 (App. Div. 1975) ("The very words 'any and all' stress the breadth of the indemnity provision and compel the conclusion that legal expenses would be considered a 'loss; within the contract."); *Birnbaum v. Calabro*, 2007 WL 1790589 at *3 (App. Div. June 22, 2017).

As stated above, in the Complaint, Plaintiffs claim that Fannie Mae violated the Agreement, which led to Plaintiffs' making unjust enrichment claims. *See* Ex. "A". However, Plaintiffs have already agreed to indemnify and defend Fannie Mae against any and all claims arising out of purported violations of the Agreement. *See* Ex. "B", ¶21. Accordingly, this Court should enforce Plaintiffs' agreement to release, hold harmless, and indemnify Fannie Mae, and bar Plaintiffs claims as a matter of law.

## VI.    THIS COURT MAY CONSIDER THE LEASE AGREEMENT IN DECIDING A FED. R. CIV. P. 12(b)(6) MOTION TO DISMISS.

In support of its Motion to Dismiss, Fannie Mae references the Agreement between Plaintiffs and Fannie Mae. *See* Ex. "B".  Legal precedent allows this Court to consider documents outside of the Complaint in certain circumstances, in deciding a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  Specifically, "[i]n evaluating motions to dismiss, courts may consider 'allegations in the complaint, exhibits attached to the complaint, matters of public record, ***and documents that form the basis of a claim***.'" *Banco Popular v. Ghandi,* 184 N.J. 161 253 (2005) (*citing Lum v. Bank of Am.,* 361 F.3d 217, 222 n. 3 (3d Cir. 2004), *cert. denied,* 543 U.S. 918, 125 S.Ct. 271, 160 L.Ed.2d 203, (2004)).

Here, Plaintiffs reference the Agreement in the Complaint, and it is the mechanism by which Plaintiffs are residing at the Property where they allege the unjust enrichment occurred.  *See* Ex. "A".  Under *Banco Popular*, this Court must be able to use the Agreement to decide this motion to dismiss as it forms the basis of Plaintiffs' claims and is integral to the allegations against Fannie Mae in the Complaint. Thus, this Court should consider the Agreement in ruling on Fannie Mae's Motion to Dismiss and grant this motion pursuant to Fed. R. Civ. P. 12(b)(6).

## VII.    CONCLUSION

Based upon the foregoing, Plaintiffs' Complaint fails to state a claim against Fannie Mae as a matter of law and must be dismissed. A proposed Order is attached.

Respectfully submitted,

Dated: March 26, 2025              By:    */s/  John M. McConnell*
John M. McConnell, Esq.
**GOLDBERG SEGALLA, LLP**
Attorneys for Defendant
Federal National Mortgage Association
301 Carnegie Center Drive, Suite 200
Princeton, NJ 08540

15